**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Christopher HAMMOND, Defendant–**
**Appellant.**

**No. 15–1619.**

United States Court of Appeals,
Sixth Circuit.

Feb. 1, 2016.

Before: SUHRHEINRICH and MOORE, Circuit Judges, LUDINGTON, District Judge.*

LUDINGTON, District Judge.

On May 22, 2014, authorities seized a cellphone containing 422 images and two videos of child pornography in the course of executing an arrest warrant for Appellant Christopher Hammond for failing to register as a sex offender in the State of Michigan. Pursuant to that discovery, an indictment was returned charging Hammond with possession of child pornography. Hammond was arrested on June 4, 2014, and ultimately pled guilty to one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A).

The United States probation department prepared a Presentence Investigation Re-

port ("PSR") recommending a five-point enhancement based on Hammond's pattern of activity involving the sexual abuse or exploitation of a minor. Hammond filed an objection to the five-point enhancement, which was overruled by the District Court Judge. Concluding that Hammond had a guideline range of 210–262 months and a criminal history category of IV, the District Judge sentenced Hammond to 240 months' incarceration followed by lifetime supervised release. Hammond now appeals his sentence, arguing that the record did not support the District Judge's application of the five-point enhancement. For the reasons set forth below, we AFFIRM.

## I.

### A.

The events underlying Hammond's current appeal began in the year 1996 in the state of Kansas, where Hammond was charged with aggravated indecent liberties with a child in violation of K.S.A. 21–3504(a)(3)(A) and attempted aggravated indecent liberties with a child in violation of K.S.A. 21–3301(a). "Aggravated indecent liberties with a child" is defined by the Kansas statute as "Any lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both" when the child is under 14 years of age. 21–3504(a)(3)(A).

The conduct underlying the 1996 Kansas charges was detailed in a PSR. The Kansas PSR explains that a four year-old girl stated to her mother that Hammond "had gotten her out of bed the night before and brought her into the living room to put lotion on her vagina." During the presen-

* The Honorable Thomas L. Ludington, District Judge for the Eastern District of Michigan, sitting by designation.

tence interview in that case, Hammond told the investigator, "It happened. I'm not denying that it happened. Why, I don't know." He elaborated:

I don't understand why. I kind of detest it. It's something I don't agree with. It happened. I'm responsible. I'm not attracted to young children sexually. I like kids, period. I'll get on the floor and play house or Barbies. I was in Grand Rapids, Michigan, stranded there. My brother and sister-in-law up and moved in two days. The same thing happened with [my daughter] and I moved back to Ann Arbor. That was two years ago. I convinced my family it never happened. I tricked them all, passed the polygraph; it was investigated but not official. It was fondling. Exactly the same thing. And that was it; I've been around hundreds of kids.

Hammond ultimately pled no contest to the attempt charge, and was sentenced to 44 months in prison. The court also sentenced him to 60 months of post release supervision, explaining that "Defendant has been diagnosed as a pedophile; defendant self admits to committing similar offense on a prior occasion; the victim of this offense was a small child." The court also informed Hammond of his duty to register as provided by the habitual sex offender registration act.

## B.

Eighteen years later in the state of Michigan, an arrest warrant was issued for Hammond after he failed to register as a sex offender. On March 20, 2014, law enforcement went to Hammond's last known residence and made contact with another resident at that location. The resident informed the officers that he had observed pornographic images of girls who appeared to be around seven-years-old on Hammond's cellphone. Hammond was eventually arrested at a bus stop on April 1, 2014, and his cellphone was seized based on the statements of his previous roommate. On April 9, 2014, a state search warrant was obtained to search Hammond's cellular phone.

Pursuant to that warrant, the Government discovered approximately 422 images and two videos of child pornography on Hammond's cellphone. Consequently, on May 22, 2014, the Government initiated the instant case against Hammond by filing an indictment charging him with one count of possession of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(b) and (b)(2), and one forfeiture count. Hammond was arrested in the Eastern District of Michigan on June 4, 2014, and found competent to stand trial on December 4, 2014. A superseding felony information was issued on December 28, 2014 charging Hammond with one count of receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2)(A) and (b)(1)and one forfeiture count.

On December 30, 2014, Hammond entered into a plea agreement with the Government, in which he agreed to plead guilty to the offense alleged in the superseding information and waive his right to an indictment. Hammond also agreed to forfeit the property identified in the forfeiture allegation. He specifically reserved his right to appeal any objections preserved at sentencing to the District Court's calculation of his final Guidelines range.

The United States Probation Department prepared an initial PSR on March 30, 2015, and a revised PSR on April 29, 2015, recommending application of the five-level enhancement of U.S.S.G. § 2G2.2(b)(5) due to Hammond's pattern of activity involving the sexual abuse or exploitation of a minor. That recommendation was based on Hammond's Kansas conviction and his state-

ment that the same thing had happened with his daughter but that authorities had not been able to prove it occurred. The PSR further noted that Hammond's mother had confirmed that he had sexually abused his daughter. Hammond filed numerous objections to the PSR, including an objection to the five-level enhancement.

Hammond's sentencing took place on May 27, 2015. In overruling Hammond's objection to the five-level pattern of activity enhancement, the district court looked to both the plea documents from Hammond's prior conviction and the unchallenged facts in the PSR.[1] Sent. Tr. 24:15–25, Pg. ID 392. Based on the totality of that evidence, the district judge did not think there was "any question that Mr. Hammond pled guilty to actual touching under the clothing of the little girl." *Id.* at 25:1–2. The district court explained that Mr. Hammond had never denied that the four year old child stated that Mr. Hammond put lotion on her vagina. The court went on to explain that "it's really unlikely that he would have put lotion on her vagina not under her clothing." *Id.* The district court concluded that Hammond's acknowledgment that he committed the same offense with his daughter was sufficient to establish a pattern of activity. *Id.* at 25:1114.

## II.

We review district court sentencing decisions for reasonableness. *Gall v. United States,* 552 U.S. 38, 51, 128 S.Ct. 586, 169 L.Ed.2d 445 (2007). This reasonableness inquiry has two parts. First, an appellate court must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range". *Id.* Second, if the "district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Id.* If the sentence is within the Guidelines range, an appellate court may apply a presumption of reasonableness. *Id.* When reviewing procedural errors, we review a sentencing court's factual determinations for clear error and its interpretations of the guidelines de novo. *United States v. Paull,* 551 F.3d 516, 526 (6th Cir.2009).

Hammond claims that the district court's calculation of his guideline range constitutes significant procedural error because the five-level pattern of activity enhancement is not supported by the record. Hammond argues that the evidence relied on does not contain sufficient indicia of reliability to support its probable accuracy as required by U.S.S.G. § 6A1.3(a). He also argues that his prior Kansas conviction is not an offense that falls within the scope of U.S.S.G. § 2G2.2(b)(5).

## A.

Section 2G2.2(b)(5) provides: "If the defendant engaged in a pattern of activity involving the sexual abuse or exploitation of a minor, increase by 5 levels." U.S.S.G. § 2G2.2(b)(5). The application notes explain that such a pattern consists of "any combination of two or more separate instances of the sexual abuse or sexual ex-

---

1. Throughout the sentencing hearing, both the parties and the district court conflated an increase of the statutory range under 18 U.S.C. § 2252A(b)(1) with an application of the five-level enhancement of U.S.S.G. § 2G2.2(b)(5). This caused some confusion, as a sentencing court is more limited in the documents it can consider in increasing a statutory minimum based on prior offenses, *see Shepard v. United States,* 541 U.S. 13, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), than it is in applying U.S.S.G. § 2G2.2(b)(5). Hammond challenges only the application of U.S.S.G. § 2G2.2(b)(5).

ploitation of a minor by the defendant, whether or not the abuse or exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2 Cmt. n. 1. Sexual abuse or exploitation includes conduct described in 18 U.S.C. §§ 2241, 2242, and 2243, among others, as well as "an offense under state law, that would have been an offense under ... such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States." *Id.* The enhancement applies to attempts as well as completed offenses. *Id.*

To constitute an offense under 18 U.S.C. §§ 2241, 2242, and 2243, the conduct must include a "sexual act" instead of mere "sexual conduct." "Sexual act" is defined in 18 U.S.C. § 2246(2)(D) as "the intentional touching, *not through the clothing*, of the genitalia of another person who has not attained the age of 16 years with an intent to abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." *Id.* (emphasis added).

The district court is permitted to find facts supporting the pattern-of-activity enhancement by a preponderance of the evidence. *See United States v. Davis,* 751 F.3d 769, 778 (6th Cir.2014) (citing *United States v. Denson,* 728 F.3d 603, 614 (6th Cir.2013)). "Accordingly, the district court is not limited to *Shepard*-approved documents in making this determination" (as it would be in the case of determining a mandatory minimum sentence) "so long as the information it relies on is reliable." *Id.* A sentencing court "may accept any undisputed portion of the presentence report as a finding of fact." Fed.R.Crim.P. 32(i)(3)(A).

In summary, the district court could properly apply the five-level increase in this case if it found that evidence with "sufficient indicia of reliability to support its probable accuracy" demonstrated that Hammond, on at least two prior occasions, had touched or attempted to touch the genitalia of a minor or minors under the clothing. *United States v. Hunt,* 487 F.3d 347, 352 (6th Cir.2007) (quoting U.S.S.G. § 6A1.3(a)).

## B.

Hammond has not produced any evidence to contradict the information set forth in the PSR. Instead he argues that the information does not have sufficient indicia of reliability to support the five-level enhancement. Generally, "[w]hen a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant." *United States v. Geerken,* 506 F.3d 461, 467 (6th Cir.2007) (citing *United States v. Duckro,* 466 F.3d 438, 449 (6th Cir.2006)). At the same time, however, this Court has held that evidence relied on by a sentencing court must have at least a minimum indication of reliability. *United States v. Reid,* 357 F.3d 574, 582 (6th Cir.2004).

### i.

Hammond first alleges that the evidence relied on by the district judge is not sufficiently reliable because the evidence contains "multiple levels of hearsay." Sentencing courts may consider hearsay without any confrontation requirement "[s]o long as the evidence in the presentence report bears some minimal indicia of reliability in respect of defendant's right to due process." *United States v. Silverman,* 976 F.2d 1502, 1511 (6th Cir.1992) (internal quotation marks omitted). *See also United States v. Katzopoulos,* 437 F.3d 569, 576 (6th Cir.2006) (explaining that the Sixth Circuit will "continue to observe [our] precedent that testimonial

hearsay does not affect a defendant's right to confrontation at sentencing."). Furthermore, we have previously held that "[i]f a prior statement is sufficiently reliable to be substantively admissible under the rules of evidence, such a statement surely possesses the 'minimal indicia of reliability' necessary for its use at sentencing." *United States v. Hadley*, 431 F.3d 484, 512 (6th Cir.2005).

Hammond himself acknowledges that "The PSR prepared in the Kansas case states that a four year-old girl stated to her mother that Mr. Hammond 'had gotten her out of bed the night before and brought her into the living room to put lotion on her vagina area.'" Hammond claims this statement is not reliable because "the information was based on something the four-year-old (1) apparently told her mother (2), who reported something to the police (3) whose report apparently was incorporated into the state presentence report (4)." However, concerns regarding the reliability of the statement were largely alleviated when, during the Kansas presentence investigation, Hammond told the investigator, "It happened. I'm not denying that it happened. Why, I don't know" and "[i]t was fondling." In the district court Hammond did not deny that he made such statements, and he does not contest them on appeal. To the extent he argues that what he admitted is different than what the four-year-old described, the district court found that a preponderance of the evidence suggested that "it" referred to getting the four-year-old out of bed and bringing her to the living room in order to put lotion on her vagina. Hammond has not established that this finding was clear error.

## ii.

Hammond also argues that the instant PSR did not accurately report the substance of the 1996 Kansas PSR, demonstrating that the evidence relied on by the district court is not sufficiently reliable. Hammond's critique focuses on the portion of the PSR that states: "According to the presentence report prepared for [the 1996] offense, Mr. Hammond fondled the vagina [sic] a four-year old girl for whom he was babysitting. The child disclosed it to her mother and her mother, in turn, reported the incident to police." Hammond now argues that this summary does not accurately report the statement of the child.

Hammond did not previously contest or object to the PSR's characterization of the Kansas offense. In fact, when asked at sentencing if he had any factual objections to the PSR, Hammond's counsel stated that there were "[n]o factual issues other than how they may impact the objections, legal objections we make" and that "we really don't take any issue with the report regarding Mr. Hammond and the essentials of what we will be discussing later by way of objection." Because Hammond did not object to the facts set forth in the PSR, the district court was "entitled to rely on those facts when sentencing the defendant." *Geerken*, 506 F.3d at 467. Accordingly, Hammond may not challenge the facts now on appeal.

Furthermore, the PSR's summary of the Kansas offense is not so inaccurate as to cast the reliability of the PSR into doubt. The Kansas documents make clear that Hammond was charged with aggravated indecent liberties with a child in violation of K.S.A. 21–3504(a)(3)(A) and attempted aggravated indecent liberties with a child in violation of K.S.A. 21–3301(a). Those charges stemmed from a statement that a four-year-old made to her mother that Hammond "had gotten her out of bed the night before and brought her into the living room to put lotion on her vagina area." In discussing the offense with the presentence investigator in that matter, Hammond himself stated "[i]t was fondling." Accordingly, the PSR in the present mat-

ter is not inaccurate in characterizing the prior Kansas offense as fondling.

### iii.

Hammond next argues that his prior Kansas conviction does not support an application of § 2G2.2(b)(5)'s five-point enhancement because the relevant Kansas statute does not require touching under the clothing. At sentencing, the district court noted that Hammond had never denied the child's statement that Hammond put lotion on her vagina and found that "it's really unlikely that he would have put lotion on her vagina not under her clothing."

As Hammond points out, the child's statement, as reported in the Kansas PSR, was not that Hammond actually put lotion on her vagina but that he "had gotten her out of bed the night before and brought her into the living room to put lotion on her vagina area." Yet any error the sentencing judge made in construing the statement to mean that Hammond actually put lotion on the child's vagina is harmless, because section 2G2.2(b)(5) applies to attempts as well as to completed offenses. Besides, Hammond's statements that "[i]t happened" and "[i]t was fondling" suggest that he did in fact complete the offense.

The district court's finding that Hammond had touched the child directly on the vagina, as opposed to through the clothing, is supported by the evidence. As the district judge stated, it is really unlikely that Hammond would have put lotion on the girl's vagina through the clothing. The district court therefore did not commit clear error in concluding that the conduct underlying Hammond's Kansas conviction supported an application of section 2G2.2(b)(5).

### iv.

Finally, Hammond argues that the evidence did not support a finding that he fondled his daughter under her clothing. Hammond therefore argues that the evidence does not support a finding that Hammond engaged in a pattern of activity involving the sexual abuse or exploitation of a minor as required under section 2G2.2(b)(5).

Because the evidence supports a finding that Hammond's conduct with the Kansas child was a qualifying sexual act, the evidence also supports a finding that Hammond's conduct with his daughter was a qualifying sexual act. Hammond himself admitted during the Kansas investigation: "The same thing happened with [my daughter] and I moved back to Ann Arbor. That was two years ago. I convinced my family it never happened. I tricked them all, passed the polygraph; it was investigated but not official. It was fondling. Exactly the same thing." Additionally, the PSR states that Hammond's mother confirmed that he had sexually abused his daughter. Hammond did not object to either portion of the PSR.

Hammond's admission that the "same thing" that happened with the Kansas girl also happened with his daughter, together with his mother's corroborating statements, support a finding that his conduct with his daughter was a qualifying sexual act. Consequently, the district court did not clearly err in finding that Hammond had touched the genitalia of a minor or minors under the clothing on at least two prior occasions, and applying the pattern of activity enhancement under section 2G2.2(b)(5).

### III.

Accordingly, Hammond's sentence is **AFFIRMED.**