NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0261n.06

Case No. 20-5924

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>UNITED STATES OF AMERICA,<br><br>    Plaintiff-Appellee,<br><br>v.<br><br>ERIC WORLEY,<br><br>    Defendant-Appellant.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>**FILED**<br>Jun 01, 2021<br>DEBORAH S. HUNT, Clerk<br><br>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE<br><br>O P I N I O N</td></tr>
</table>

BEFORE:   COLE, BUSH, and NALBANDIAN, Circuit Judges.

COLE, Circuit Judge.   Eric Worley appeals his 164-month sentence on one count of possession of methamphetamine with intent to distribute. He claims that the district court erred in considering the total amount of methamphetamine he admitted purchasing in the six months prior to his charged offense to determine his recommended sentence under the Guidelines. We disagree and affirm.

I.

On October 5, 2017, sheriff's detectives in Hamilton County, Tennessee, searched a property on the outskirts of Chattanooga where they suspected that methamphetamine was being manufactured. In an outbuilding on the premises, the detectives found Eric Worley lying on a bed with a rifle beneath him. In the same outbuilding they found a bag with 56.6 grams of

methamphetamine, various drug paraphernalia, multiple firearms, and dozens of rounds of ammunition. The detectives arrested Worley pursuant to an active probation warrant and *Mirandized* him. The next day, Worley admitted to police that he had been purchasing an average of ten ounces of methamphetamine per week from a source in Chattanooga since March 2017. Worley also admitted to making a one-time purchase of one kilogram of methamphetamine from the same source as well as other purchases from a second source around East Ridge, Tennessee.

In May 2019, a federal grand jury sitting in the Eastern District of Tennessee returned a two-count indictment against Worley. Count One was for possession of methamphetamine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(C), and Count Two was for unlawful possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Later that year, Worley pleaded guilty to Count One, and in exchange the government agreed to drop the firearm charge.

Worley's presentence investigation report ("PSR") found that Worley was responsible for a total of 4.06 kilograms of methamphetamine, rejecting Worley's contention that he should be accountable for only the 57 grams that detectives found near him upon his arrest. The PSR determined that Worley's regular drug purchases in the six months prior to his arrest were "relevant conduct" under § 1B1.3 of the Sentencing Guidelines, as was his one-time purchase from the same source. The PSR held Worley accountable for purchasing four ounces of methamphetamine per week for 27 weeks—that is, 108 ounces or 3.06 kilograms, in total—in addition to his one-time one kilogram purchase. This estimate was based on the lowest specific amount that Worley admitted purchasing from his regular source (four ounces), rather than the ten ounces per week that he admitted purchasing on average. The PSR thus calculated Worley's base offense level as 32 for a drug offense involving at least 1.5 but less than 5 kilograms of methamphetamine under

§ 2D1.1(a)(5) and (c)(4) of the Guidelines. After various offense-level adjustments and given Worley's criminal history category of VI, none of which are disputed here, Worley's recommended sentence under the Guidelines was 188 to 235 months' imprisonment.

At his August 7, 2020, sentencing hearing, Worley objected to the total drug quantity attributed to him, arguing that his previous methamphetamine purchases did not qualify as "relevant conduct" under § 1B1.3 and that the government had not otherwise presented adequate proof of the purchases. The district court rejected those arguments and adopted the PSR's Guidelines calculations. The district court ultimately sentenced Worley to 164 months' imprisonment, a 24-month downward variance from his minimum guideline sentence. Worley timely appealed.

Before us, Worley has abandoned the argument that his prior drug purchases were not "relevant conduct" under § 1B1.3. Instead, he focuses on his contention that the government failed to prove his prior drug purchases by a preponderance of the evidence and that the district court did not err on the side of caution, as our precedent requires, when adopting the PSR's estimates of the total drug quantity attributable to him for his charged offense.

II.

At sentencing, the government must prove by a preponderance of the evidence the quantity of drugs involved in an offense. *United States v. McReynolds*, 964 F.3d 555, 563 (6th Cir. 2020). We review the district court's factual determination of the quantity of drugs for clear error. *Id.* Further, "when . . . the precise quantity of drugs involved is uncertain, the district court must 'err on the side of caution' and may only hold a defendant accountable for a specific quantity for which he is more likely than not actually responsible." *United States v. Johnson*, 732 F.3d 577, 581 (6th Cir. 2013) (quoting *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990)).

Here, the district court did not clearly err in adopting what was a conservative estimate of the amount of drugs Worley purchased in the six months preceding his arrest, based on Worley's own admissions to the police.

Worley contends that the district court did not have reliable evidence corroborating the amount of methamphetamine he purchased from March to October 2017. He argues that his own statements to police were unrecorded and made almost three years prior to his sentencing. But when "the defendant admits to involvement in numerous drug transactions, it is not clearly erroneous for the court to determine that a preponderance of the evidence establishes that the defendant has been involved in such transactions." *United States v. Wilson*, 954 F.2d 374, 377 (6th Cir. 1992). Indeed, nothing in the federal rules or our case law requires that the government corroborate facts included in a PSR when the defendant does not object to their accuracy. On the contrary, a district court "may accept any undisputed portion of the presentence report as a finding of fact," regardless of whether there is any further corroborating evidence at sentencing. *See Johnson*, 732 F.3d at 581 (quoting Fed. R. Crim. P. 32(i)(3)(A)).

The PSR expressly incorporated Worley's admissions regarding his prior drug purchases, and at no point during his sentencing hearing nor before us has Worley disputed the accuracy of those statements. At sentencing, Worley objected that his prior drug purchases did not qualify as relevant conduct under § 1B1.3 of the Sentencing Guidelines. That is not an objection to the *accuracy* of the PSR's factual statements. *See United States v. Everhart*, 76 F. App'x 662, 664 (6th Cir. 2003) (concluding that the defendant's objection to a sentencing enhancement did not create a "factual dispute" when the defendant failed to object to the specific facts in the PSR supporting the enhancement).

Moreover, "[w]hen a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant." *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007). Worley has provided no evidence to contradict the drug quantities set forth in the PSR. The district court therefore did not clearly err in relying on the PSR's summary of Worley's statements regarding his prior drug purchases.

Worley additionally argues that the district court failed to "err on the side of caution" when determining the precise amount of drugs to attribute to Worley for his offense. *See Johnson*, 732 F.3d at 581. We cannot agree. The PSR, which the district court adopted, held Worley accountable for purchasing four ounces of methamphetamine per week for the 27 weeks leading up to his arrest. As the PSR stated, this was a conservative estimate of total drugs Worley purchased given that he admitted to purchasing an average of *ten* ounces per week for the same period. As for the additional kilogram of methamphetamine that the PSR attributed to Worley, he squarely admitted to purchasing this specific amount. The district court thus had no need to err on the side of caution on that point. *See Johnson*, 732 F.3d at 581.

In sum, the PSR relied on Worley's own statements to law enforcement when determining its conservative estimate of the total amount of drugs for which to hold Worley accountable. Worley never objected to the accuracy of the PSR's summary of his statements, and he presented no contrary evidence regarding the quantity of drugs he purchased and possessed. The district court thus did not clearly err in finding Worley responsible for 4.06 kilograms of methamphetamine by a preponderance of the evidence.

### III.

For the foregoing reasons, we affirm the district court's judgment and Worley's sentence.